**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**NORTHERN DIVISION**

TAMMY HAMMER,                    )
                                 )
            Plaintiff,           )
                                 )
        v.                       )        No. 2:23-CV-28 HEA
                                 )
MARTIN O'MALLEY,                 )
Commissioner of Social Security,[1]  )
                                 )
            Defendant.           )

## OPINION, MEMORANDUM AND ORDER

Plaintiff Tammy Hammer brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the Commissioner's final decision denying her application for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*

A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary. For the following reasons, the decision of the Commissioner is affirmed.

---

[1]Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Therefore, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley should be substituted for Kilolo Kijakazi as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## *I.  Procedural History*

On January 21, 2021, Plaintiff protectively filed her application for DIB under Title II.  (Tr. 194-200).  Plaintiff, who was born on April 3, 1965, alleged she had been unable to work since September 1, 2019, due to asthma, chronic obstructive pulmonary disease ("CPOD"), high blood pressure, right shoulder surgery, bulging discs, degenerative disc disease, and an emotional disorder.  (Tr. 216).  Plaintiff's application was denied on initial consideration, and she requested a hearing before an Administrative Law Judge ("ALJ").  Plaintiff and counsel appeared for a hearing on March 9, 2022. (Tr. 33-82).  Plaintiff testified concerning her disability, daily activities, functional limitations, and past work. *Id.* The ALJ also received testimony from vocational expert ("VE") Darren Wright. *Id.* On June 14, 2022, the ALJ issued an unfavorable decision finding Plaintiff not disabled. (Tr. 10-24). Plaintiff filed a request for review of the ALJ's decision with the Appeals Council.  On March 23, 2023, the Appeals Council denied Plaintiff's request for review. (Tr. 1).  Plaintiff has exhausted her administrative remedies, and the ALJ's decision stands as the final decision of the Commissioner subject to judicial review.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3).

In this action for judicial review, Plaintiff claims the ALJ committed reversible errors in her decision.  Plaintiff requests that the Commissioner's decision

be reversed, and the matter remanded for an award of benefits or for further evaluation.

## II.  Legal Standard

To be eligible for DIB under the Social Security Act, plaintiff must prove she is disabled.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992).  The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  An individual will be declared disabled "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity.  If the claimant is working, disability benefits are denied.  Second, the Commissioner decides whether

the claimant has a "severe" impairment or combination of impairments, meaning that which significantly limits his or her ability to do basic work activities. If the claimant's impairment is not severe, then he or she is not disabled. Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), (d).

At the fourth step, if the claimant's impairment is severe but does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the RFC to perform his or her past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011); *see also* 20 C.F.R. § 416.945(a)(1). Ultimately, the claimant is responsible for providing evidence relating to his or her RFC, and the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). If, upon the

findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

In the fifth step, the Commissioner evaluates various factors to determine whether the claimant is capable of performing any other work in the economy. If the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production shifts to the Commissioner to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy. *See Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work which exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* In the fifth step, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v.*

*Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001).  The "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings."  *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted).  "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis."  *Id.* (internal quotation marks and citations omitted).  Under this test, the Court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision."  *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence."  *Id.* The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently."  *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016).

### III.  The ALJ's Decision

In a decision dated June 14, 2022, the ALJ applied the above five-step analysis and found Plaintiff had not engaged in substantial gainful activity since the period from her alleged onset date of September 1, 2019; Plaintiff has the severe impairments of asthma, CPOD, osteoarthritis, lumbar degenerative disc disease, and status post right shoulder surgery, (Tr. at 13); and Plaintiff did not have an

impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 15).

As for Plaintiff's RFC, the ALJ found Plaintiff retained the ability to perform light work as defined in 20 C.F.R. § 404.1567(b),[2] but that she had the following additional functional limitations:

> never climb ladders, ropes, or scaffolds, occasionally climb ramps or stairs, occasionally balance, stoop, kneel, crouch and crawl. [Plaintiff] should avoid concentrated exposure to extreme cold, extreme heat, excessive humidity, pulmonary irritants such as fumes, odors, dusts, gases, and workplace hazards such as dangerous moving machinery but should avoid all exposure to unprotected heights. [Plaintiff] is limited to frequent reaching overhead bilaterally and frequent handling with the right upper extremity.

(Tr. 16).

At the fourth step, the ALJ found Plaintiff was able to perform her past relevant work as a receptionist. (Tr. 22).  Relying on the testimony of the VE, the ALJ found, "[T]his work did not require the performance of work-related activities precluded by the [Plaintiff]'s residual functional capacity." (*Id.*)  As an alternative

---

[2]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(a).

finding, the ALJ found there were other jobs in the national economy that she was capable of performing prior to her fifty-fifth birthday, including marker, garment sorter, and classifier. (Tr. 23). At the end of her analysis, the ALJ concluded Plaintiff was not disabled. (*Id.*)

## IV. Discussion

In support of her request for reversal and remand, Plaintiff argues that the ALJ made legal errors in that she found Plaintiff was capable of performing her past relevant work. She contends that her job as a receptionist does not qualify as past relevant work because it was not performed at the level of substantial gainful activity. Plaintiff further argues that the ALJ's alternative finding that she was capable of other work in the national economy must be reversed as of her fifty-fifth birthday. Plaintiff also faults the ALJ for failing to include mental limitations she found credible in step two in her RFC determination. The Court will first consider the ALJ's RFC analysis.

### A.    RFC Analysis

Plaintiff argues that the ALJ committed reversible error by failing to include mental impairments in her RFC determination or, alternatively, by failing to explain why she did not include the limitations. Plaintiff points to the fact that in step two the ALJ found she had mild limitations in two of the four areas of mental

functioning, yet she included no mental limitations in Plaintiff's RFC.[3]  Plaintiff argues that the ALJ's decision was internally inconsistent, not well-explained, and must be reversed. The Commissioner counters that the ALJ was not required to include any non-severe mental impairments in the RFC because the ALJ found that Plaintiff's non-severe mental impairments, which she classified as mild, imposed no significant limitations on her ability to work.

At step two of the disability analysis, the ALJ determines if a claimant's impairments are severe. An impairment is not severe if it "amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).  When determining the severity of a mental impairment, an ALJ employs the psychiatric review technique ("PRT") and evaluates the claimant's limitations in four broad areas of mental functioning, known as "paragraph B" criteria found in 20 C.F.R., Part 404, Subpart P, Appendix 1.  *Cuthrell v. Astrue*, 702 F.3d 1114, 1116 (8th Cir. 2013).  Findings regarding a claimant's limitations in these four broad areas are used to determine whether the mental impairment meets or equals one of the listed impairments. If a claimant does not have an impairment that meets or equals one of the listed impairments in step three, the ALJ must determine the claimant's

---

[3]Importantly, Plaintiff does not object to the ALJ's evaluation of the evidence or the medical opinions in this case.  Instead, she faults the ALJ for finding mild mental limitations in step two and then not including them in the RFC.

RFC, which is defined as the most a claimant can do despite her physical and mental limitations. *Hensley v. Colvin*, 829 F.3d 926, 931 (8th Cir. 2016); *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012).  An ALJ must consider all of the claimant's relevant, credible impairments in the RFC formulation, including those that were determined to be non-severe. *Mabry v. Colvin*, 815 F.3d 386, 390 (8th Cir. 2016).

Here, the ALJ evaluated in step two whether Plaintiff's depression was a severe mental impairment.  Plaintiff reported that she was diagnosed with depression in approximately 2001, and that she attended therapy for only about a year.  (Tr. 378).  She did not report any mental health treatment since that time, although she was taking Prozac as of June 2021.  (*Id.*)  At the hearing, Plaintiff testified that she was no longer taking her prescription medications because she could not afford them.

As part of the PRT, the ALJ evaluated Plaintiff's mental functioning in the four broad areas known as "paragraph B" criteria. She found Plaintiff had no limitations in understanding, remembering, or applying information and in adapting or managing oneself. (Tr. 14-15). The ALJ did find Plaintiff had mild limitations in interacting with others and in concentrating, persisting, or maintaining pace. With no more than mild limitations in any of the functional areas, and because the evidence did not otherwise indicate that there was more than a minimal limitation in Plaintiff's ability to do basic work activities, the ALJ concluded that Plaintiff's

mental impairments were not severe, and they did not meet a listing. (*Id.*)  She then turned to Plaintiff's RFC.

While the ALJ largely focused on Plaintiff's physical impairments in her RFC analysis, she did address Plaintiff's symptoms of depression in the context of evaluating the medial opinions.  The ALJ, however, did not include any mental limitations in her RFC determination. Plaintiff herself acknowledges that "not every mild limitation will require an associated RFC limitation." (ECF No. 22 at 3).  And importantly, Plaintiff has failed to articulate what specific limitations should have been included in the RFC.  The Court, therefore, declines to find that the ALJ committed reversible error by failing to include any mental limitations in Plaintiff's RFC. *Chismarich v. Berryhill*, 888 F.3d 978, 980 (8th Cir. 2018) (finding no error where ALJ did not include more-specific limitations in his RFC determination after finding moderate limitations in three areas of mental functioning in the step-two analysis, including a limitation in concentration, persistence, or pace).

The Court now turns to Plaintiff's alterative argument that the ALJ committed reversible error because she failed to explain why she did not include mental limitations in Plaintiff's RFC.  Plaintiff argues that the ALJ was required to explain explicitly why she did not include mild mental impairments she found credible in step two in her RFC. (ECF No. 22 at 3).  In support of her argument, Plaintiff cites to one United States Court of Appeals decision from the Tenth Circuit and a number

11

of district court cases from around the county, none of which are controlling authority.[4]

In its own research, the Court has found no case where the Eighth Circuit Court of Appeals reversed because the ALJ failed to explain explicitly why he or she did not include in the RFC mild mental limitations that were found in step two. Instead, the Eighth Circuit has stated that "the different steps serve distinct purposes, the degrees of precision required at each step differ, and our deferential standard of review precludes us from labeling findings as inconsistent if they can be harmonized." *Chismarich*, 888 F.3d at 980.  *See also West-Viotay v. Saul,* 829 F. App'x 149, 150 (8th Cir. 2020) (the findings in step two and step four serve two distinct purposes); *Lacroix v. Barnhart*, 465 F.3d 881, 888 n.3 (8th Cir. 2006) ("Each step in the disability determination entails a separate analysis and legal standard."); SSR 96-8p, 1996 WL 374184, at *4 (S.S.A., July 2, 1996). (ALJs "must remember that the limitations identified in the 'paragraph B' [ ] criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process."). The Eighth Circuit has instructed that while the PRT for the assessment of alleged mental impairments must be consistent with the ALJ's RFC determinations, "[a]s a practical matter [ ] the different steps serve

---

[4] In all her filings, Plaintiff has cited no cases from the Eighth Circuit Court of Appeals.

distinct purposes, the degrees of precision required at each step differ, and our deferential standard of review precludes us from labeling findings as inconsistent if they can be harmonized." *Chismarich*, 888 F.3d at 980.  Turning the ALJ's decision in this case, the Court finds the ALJ's findings in step two and her RFC determination in step four can be harmonized.

The ALJ found in step two that Plaintiff had mild limitations in interacting with others because Plaintiff had reported that she does not like crowds and "cries a lot." (Tr. 14).  But the ALJ also noted in step two that Plaintiff shops in stores and interacts with friends; that she does not have difficulty in cooperating with others, asking for help, handling conflicts, initiating or sustaining conversation, understanding, and responding to social cues, responding to requests, suggestions, criticism, correction, and challenges.  Further, the ALJ found that Plaintiff had no ongoing mental health treatment, and she reported that she was no longer taking her anti-depressant medication as of late 2021. (*Id.*)

In her RFC determination, the ALJ did not include a limitation for interacting with others.  For example, she did not limit Plaintiff's contact with the public, her co-workers, or supervisors, but based on the reasoning the ALJ gave in step two for finding a mild impairment in area of interacting with others, it was not inconsistent for her to not include these limitations in the RFC.  (Tr. 16). Arguably, the ALJ should have included, or more adequately explained why she was not including, a

limitation in the RFC that Plaintiff should not have interactions with crowds. But this was harmless error at most because there is no indication that Plaintiff would be exposed to crowds in the jobs the ALJ found she was capable of performing. The Court finds the ALJ's decision adequately explains why mild limitations interacting with others was not included in the RFC.

In step two the ALJ also found that Plaintiff had mild limitations in concentrating, persisting, and maintaining pace. (Tr. 14). In support of this limitation, the ALJ noted that Plaintiff testified that she is "emotional that her body does not want to cooperate," and that she "cries a lot." (*Id.*) But in step two, the ALJ also noted that the medical evidence reflects good concentration and does not reflect serious difficulties with initiating and performing tasks that she knows how to do, working at an appropriate and consistent pace, completing tasks in a timely manner, ignoring, or avoiding distractions while working, changing activities or work settings without being disruptive, working close to or with others without interrupting or distracting them. (*Id.*)

In her RFC, the ALJ did not include any limitations related to concentrating, persisting, and maintaining pace. (Tr. 16). The ALJ did note when evaluating the medical opinions in step four that Lea Ann Preston Baecht, Ph.D., found Plaintiff did not have difficulties concentrating during examinations, although it was possible

that exacerbation in pain could impact her ability to sustain concentration.  More specifically, in her report Dr. Baecht wrote:

> [Plaintiff] did not display any deficits in her ability to understand and recall information. She was able to sustain concentration during the current examination, though it is possible that exacerbations in pain could impact her ability to sustain concentration. She reported difficulties with persistence and ability to keep pace with complex tasks, but she attributed this to her physical limitations.[5]

(Tr. 379).  In other words, the expert found Plaintiff's ability to sustain concentration and maintain pace might be impacted by her level of pain – a conclusion that was based on Plaintiff's self-reporting.  But the ALJ addressed Plaintiff's complaints of pain in her RFC analysis, and she found that Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were not consistent with the totality of the record – a finding Plaintiff does not challenge in this appeal.  (Tr. 18).  Moreover, the ALJ took into account Plaintiff's pain symptoms in formulating Plaintiff's RFC when she limited Plaintiff to light work with additional limitations. Therefore, the Court finds that the ALJ's failure to include in the RFC limitations related to concentrating, persisting, and maintaining pace, which Plaintiff reported stemmed from her physical discomfort, can be harmonized with the ALJ's finding that Plaintiff exaggerated her complaints of pain.  *See West-Viotay*, 829 F. App'x at

---

[5]Dr. Baecht also wrote in her report, which is dated June 11, 2021, that "[Plaintiff] did not present with active symptoms of a mental disorder. Although she may have experienced depressive symptoms in the past, she is currently prescribed an anti-depressant medication and did not describe currently experiencing symptoms of depression." (Tr. 379).

150 (affirming the ALJ's RFC findings although they did not specify work-related limitations based on some moderate functional-area limitations that the ALJ found under the "paragraph B" criteria.  It is also consistent with the medical evidence in the record, including that Plaintiff had a diagnosis of depression for more than 20 years with very minimal mental health treatment, and that she had been prescribed an anti-depressant, which she was no longer taking.

In sum, the ALJ properly evaluated the record taken as a whole, and in her RFC determination she considered all of Plaintiff's physical and mental limitations. Although the RFC does not include any mental limitations, this conclusion is not inconsistent with her findings in step two. But more importantly, it is supported by substantial evidence in the record, including the medical evidence.  *Noerper v. Saul*, 964 F.3d 738, 744 (8th Cir. 2020); *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010).  Plaintiff's argument regarding the ALJ's RFC analysis is without merit.

### B.    Past Relevant Work

Plaintiff also challenges the ALJ's determination that she is able to perform her past relevant work. Plaintiff argues that her earnings do not support a finding that she was engaged in substantial gainful activity as a receptionist.

Step four "requires the Commissioner to determine whether the claimant has the residual functional capacity to perform his or her 'past relevant work.'" *Mueller v. Astrue*, 561 F.3d 837, 841 (8th Cir. 2009) (citing 20 C.F.R. § 404.1520(a)(4)(iv)).

"Past relevant work is work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn how to do it." 20 C.F.R. § 404.1560(b)(1). "Substantial gainful activity" is defined as "work activity that involves doing significant physical or mental activities, even if done on a part-time basis, and work that is done for pay or profit, whether or not a profit is realized." *Reeder v. Apfel*, 214 F.3d 984, 989 (8th Cir. 2000) (citing 20 C.F.R. § 404.1572(a) and (b)). In general, the amount of the claimant's earnings is the "primary consideration" for determining substantial gainful employment. 20 C.F.R. § 404.1574(a)(1). For the time period at issue in this case, a claimant's earnings "will ordinarily show" that she has engaged in substantial gainful activity if they average $1170.00 per month. 20 C.F.R. §§ 404.1574(b)(2), 416.974(b)(2)(i); United States Social Security Administration *Programs Operations Manual* (POMS), https://secure.ssa.gov/apps10/poms.nsf/lnx/0410501015 (last visited Sept. 13, 2024). The fact that a claimant's earnings were not substantial, however, "will not necessarily show that [she is] not able to do substantial gainful activity." 20 C.F.R. § 404.1574. *See also Reeder*, 214 F.3d at 989.

According to the record, Plaintiff worked from January through April 2017 as a receptionist for a franchisee of H&R Block. [6] She worked at least eight hours a

---

[6]There is an inconsistency in the record in that the Work History Form lists Plaintiff as having worked as a receptionist for H&R Block in 2016. However, Plaintiff has no reported earnings in 2016. Plaintiff was reported as having been paid by a franchisee of H&R Block in 2017. (Tr. 203). The ALJ noted at the hearing that the inconsistency was likely an inadvertent

day, five days a week and was paid approximately $9.00 an hour.  (Tr. 225-26).  In 2017, Plaintiff earned a total of $4251.02 in wages as a receptionist.    (Tr. 245). There is no indication in the record, however, as to the exact date Plaintiff started or ended this job.  Plaintiff testified at the hearing that she started the job after she had an interview in January, and that it ended "a little after" the end of tax season on April 15.  (Tr. 66).  The ALJ characterized the period as "three and a half to possibly four months."  (Tr. 76).

Plaintiff argues that during the time she worked for H&R Block as a receptionist, she only earned $1062.75 per month, which is below the substantial gainful activity level of $1170.00 a month.  Therefore, according to Plaintiff, her job as a receptionist cannot constitute past relevant work as a matter of law.  The Court does not agree.  In her calculation, Plaintiff used four full months to average her monthly earnings, but there is evidence in the record that Plaintiff did not work four full months – she started sometime in January after she was interviewed and ended a little after April 15.  If one were to subtract two weeks – one at the beginning of January and one at the end of April – Plaintiff's average monthly earnings would be $1203.12, above the substantial gainful activity level.

---

mistake, and the parties do not dispute that Plaintiff worked as a receptionist for H&R Block in 2017, not 2016.

That said, the Eighth Circuit has declined to adopt a bright line earnings test for determining substantial gainful activity.  *Reeder*, 214 F.3d at 989 ("We find it unnecessary to engage in this averaging debate.").  In *Reeder*, the claimant argued that her past seasonal work as a picker and packer could not be considered substantial gainful activity because her earnings did not satisfy the earnings requirements under the regulations.  *Id.*  The Eighth Circuit found the plaintiff's argument to be without merit and wrote the following:

> Even assuming [the plaintiff]'s earnings were below the guidelines, we find no error here. "Although earnings below the guidelines will 'ordinarily' show that an employee has not engaged in substantial gainful activity, earnings below the guidelines will not conclusively show that an employee has not engaged in substantial gainful activity." *Pickner v. Sullivan*, 985 F.2d 401, 403 (8th Cir. 1993) (citing 20 C.F.R. § 404.1574(a)(1)). The regulations state that work may be considered substantial even if it is part-time, *see id*. § 404.1572(a), which is similar to seasonal work. While work that is only "off-and-on" will not be considered, *see id.* § 404.1565(a), work may be considered gainful even if no profit is realized if it is the type of work usually done for pay or profit. *See id.* § 404.1572(b).

*Id.* The Eighth Circuit further noted that the plaintiff's work had been done for pay and involved significant physical or mental activities, and that she had learned the job and was capable of performing the work.  *Id.*  "Regardless of her low earnings, we conclude that [the plaintiffs]'s seasonal work was substantial gainful activity. Thus, we conclude that the ALJ properly considered [her] past fruit-picking work to be past relevant work without reference to the earning guidelines of the regulations." *Id.*

19

The same analysis applies here. Plaintiff testified that she sat at the front desk, answered phones, greeted people, made phone calls, made copies, and pulled tax returns. (Tr. 66). She also testified that she worked at least eight hours a day, five days a week, and there is nothing in the record to indicate either that she was unable to perform the requirements of the job or needed accommodations, or that she was frequently absent. (Tr. 66, 225). In other words, Plaintiff described typical receptionist work that requires physical and mental excursion and is normally done for pay. *Reeder*, 214 F.3d at 989 ("work may be considered gainful … if it is the type of work usually done for pay or profit).

In sum, the Court finds there is substantial evidence in the record for the ALJ to have concluded that Plaintiff's three and a half to four months working as a receptionist was substantial gainful activity, even though her average monthly earnings may not have met the threshold in the regulations. *Reeder*, 214 F.3d at 989. Therefore, the ALJ properly considered Plaintiff's job as receptionist to be past relevant work. Furthermore, the ALJ's determination that Plaintiff is not disabled within the meaning of the Social Security Act because she is capable of performing her past relevant work as a receptionist is supported by the record as a whole. Consequently, the Court need not address Plaintiff's other argument that the ALJ's alternative finding that Plaintiff was capable other work in the national economy must be reversed as of her fifty-fifth birthday.

## V. Conclusion

The Court's task "is to determine whether the ALJ's decision 'complies with the relevant legal standards and is supported by substantial evidence in the record as a whole.'" *Halverson*, 600 F.3d at 929 (quoting *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008)). The Court finds that in determining Plaintiff's RFC, the ALJ properly evaluated the evidence in the record, including the medical records, and that the RFC can be harmonized with her findings in step two regarding Plaintiff's mild mental impairments. But more importantly, the RFC determination is supported by substantial evidence in the record. The Court further finds that the ALJ did not err in concluding Plaintiff's job as a receptionist was past relevant work.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED with prejudice**.

A separate judgment will accompany this Memorandum and Order.

Dated this 30th day of September, 2024.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE